Battle, J.
 

 It is a well-settled doctrine of the courts of chancery, both in England and in this State, that a husband may make gifts or presents to his wife, which will be supported against himself and his representatives;
 
 Lucas
 
 v. Lucas, 1 Atk. Rep. 270;
 
 Garner
 
 v. Garner, Busb. Eq. 1. But the courts will not sustain such donations, unless they be proved by clear and incontestable evidence, both as to the intention, and the fact; 2 Story’s Eq. Jur. sec. 1375. In the case of
 
 Elliott
 
 v.
 
 Elliott,
 
 1 Dev. and Bat. Eq. 63, Ruffin, C.
 
 *110
 
 J., in delivering the opinion of the Court, said :
 
 “
 
 As the contract is void in law, the case, in this Court, must always be that of an application to aid a defective conveyance. The wife cannot have that assistance, unless she shows herself to be meritorious, and shows further, a clear intention that what was done, should have the effect of divesting the interest of the husband, and of creating a separate estate for her, which she should have the immediate power to dispose of as she •chose ; and that the estate, thus intended for her, was but a reasonable provision. Hence, although the doctrine, that Equity will recognise such transactions under circumstances, is laid down in the books, there are very few cases, indeed, in which a gift by the wife to her husband qf her separate estate, once well constituted, or a gift by the husband to the wife, have been made effectual. They almost all fail j either from, the extravagance of the gift, or the insufficiency of the evidence to establish the intention of an actual gift by what was done.” In another part of the opinion, the learned Judge remarked, “A father may wish to advance a child before marriage, but a husband seldom wishes to put his wife on a»n independent footing. He may, perhaps, do so, but it requires clear proof.”
 

 With the principles of evidence, applicable to post-nuptial gifts, thus clearly enunciated, for our guidance, let us examine whether the alleged gift by the plaintiff’s intestate to his wife, the defendant’s testatrix, of the price of the slave, mentioned in the pleadings, is sustained by the proofs.
 

 The only direct testimony relied upon by the defendants to establish the gift, is found in the deposition of
 
 Mrs. Walker.
 
 She states that William Hagood (the plaintiff’s intestate) came to her bouse a short time before the sale of the slave, when she said to him : “I suppose you have sold Frank.” To which he replied: “No, that he had not sold him, hut his wife had.” The witness says, she then asked him, “ if lie was not going to have the money for the said slave.” He replied :
 
 “
 
 No; that it was his wife’s, and that he did not want it.” — - He further said, that “ his wife had the bond, or money',
 
 *111
 
 for the said sale.” As corroborative of this testimony, the defendants rely upon the following receipt given by the wife to Edmund White, who was her son-in-law, and had assisted her in making sale of the slave: “ Received of Edmund White, one bond on William and John Watson, for the sum of seven hundred and fifty-three dollars, payable to William Hagood, bearing interest from date, and dated 28th of May, 1852. This 21st February, 1853.”
 

 her
 

 Test — John C. Johnson. Susan H Hagood.
 

 mark
 

 The defendants rely also on the absence of proof, that the intestate ever claimed the bond, or the money due on it, in his time-time, or that he ever gave it i'n for taxation, and further, that it is not mentioned or embraced in his will.
 

 To rebut the effect of 'this proof, the plaintiff refers to the deposition of
 
 William P.
 
 Hose,-which states, that Mrs. Ha-good handed him a certain amount of money, through the hands of his wife, which he supposed was the proceeds of the slave in question, and asked him to lend it out for her, but not to let it be known whose money it was; that this was in the latter part of the year-1853 ; that he did lend it to James A. Egerton, and took therefor a bond payable to himself, and that he refused to tell Mr. Egerton more than that the money belonged to an old lady. He states further, that he never thought about listing the money for taxation, and never paid any tax upon it. After the death of Williarñ Hagood, he denied to his administrator, that he had the money or any bond for it. The plaintiff relies, also, on the testimony of
 
 John Head,
 
 a justice of the peace, who says, when Mrs. Hagood came before him to give in her list of taxables, in the year 1857, which was after the death of her husband, he asked her, if she had any money at interest; to which she replied, that she had not, and that “ she was very poor and needy.”
 
 Mr. 'JEgerton
 
 states, in his deposition, that he did not know to whom the money, which he borrowed, belonged, but'that since Mrs, Ilagood’s death, he has taken up the bond he gave to Rose,
 
 *112
 
 by giving to her executor another bond for $500 ; settling the residue with Mr. Rose.
 

 Several witnesses testify, that Win. ITag.ood and his wife-lived unhappily together — that she was very cross, and she-told one of the witnesses that she and her husband did noitr occupy the same bedchamber.
 

 A careful consideration of all these proofs,, lead's us to- the conclusion, that the alleged gift by the- husband to the wife, of the bond, or of the money paid on it, is not established by such clear proof of the fact and the intention, as is required by a court of equity. .Even the testimony of Mrs. Walker, supposing it were unaffected by any other proof in the cause, leaves us in doubt, whether the plaintiff’s intestate was not merely acquiescing in the usurped possession of the bond or money, by his wife, instead of acknowledging that he had made a free and voluntary donation of it to her. But when-we reflect on the secrecy with which she kept and disposed of the money, and her denial on oath, after the death of her bus-band, that she had any at interest, we cannot reject the infer' ence that she had obtained it unfairly, and without the full knowledge and consent of her husband. The receipt which she gave for the bond to Edmund White, proves nothing, ex' cept that the possession was transferred from him to her. It was still her husband’s property, and left the question of a gift of it by him to her, untouched.
 

 The other circumstances relied on by the parties, respectively, are of ndt much importance. The burden of the proof' was upon the- wife, or those who represent her, and they have-failed to satisfy us, by such clear and incontrovertable evidence as the Court is bound to require, that there ever was a free and voluntary gift of the bond or money by the husband to his wife.
 

 Bnt supposing the defendants have failed in their proofs, they insist that the plaintiff has a complete remedy at law, and cannot, therefore, maintain a suit against them in, this Court, and if they can, that it is barred by the statute of l'inai-itations. The reply is, that Mrs. Iiagood and her son-in-law,
 
 *113
 
 White, sold the slave as the agent of her
 
 husband;
 
 that White, first, and she afterwards, held the bond in the same capacity; that she received the money and lent it ont, through her agent, Rose, still as agent for her husband, and that he and his representative had a right to file a bill for a discovery, and follow the fund; and further, that the statute did not begin to run until a demand was made upon the agent.
 

 If the enquiry made by the plaintiff of Rose, to know whether he did not have the money, is to deemed, a demand,, still the statute is not a bar, because that enquiry was. made-in the year 1856* and the bill was filed in.less than, three years-afterwards.
 

 Our opinion is,, that none of the objections- urged against the plaintiff’s right to relief are available for the defendants,, and he may, therefore,, have a decree according to the prayer of his bill.
 

 Pee Cueiaat,, Decree accordingly.